UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SELLARS ABSORBENT MATERIALS, INC.,

    Plaintiff,

v.                                                Case No. 11-C-0400

SUSTAINABLE TEXTILE GROUP, LLC, et al.,

    Defendants.

---

## DECLARATION OF JOSEPH A. MAYER

---

**JOSEPH A. MAYER**, under penalty of perjury, declares as follows:

    1.    I am the Chief Financial Officer of Sellars Absorbent Materials, Inc. ("Sellars"). I make this affidavit in support of Sellars' Motion for Partial Summary Judgment.

    2.    Attached as Exhibit A is a true and correct copy of the December 24, 2009 Supply/License Agreement between Sellars, Sustainable Textile Group, LLC ("STG"), Sustainable Solutions Inc. ("SSI"), Strateline Industries of Arkansas, LLC ("Strateline"), Circle 360 LLC ("Circle"), Kenneth R. Mourton ("Mourton"), Mitchell Massey ("Massey") and K. Joy Nunn ("Nunn").

    3.    Attached as Exhibit B is a true and correct copy of the January 12, 2010 Guarantee and Amendment to Supply/License Agreement between the same parties plus one additional party, S. Line Capital, LLC ("S-Line"), which amended the terms of the December 24, 2009 Supply/License Agreement.

    4.    Pursuant to the December 24, 2009 Supply/License Agreement, as amended by the January 12, 2010 Guarantee and Amendment to Supply/License Agreement (the "Agreement"), Sellars made loans totaling $373,384.67, both by advancing cash to Strateline and

S-Line and by paying for raw materials they needed. As of September 16, 2010, the unpaid amount outstanding on the loans was $89,786.43. Pursuant to the terms of the Agreement, STG, SSI, Strateline, Circle, S-Line and Mourton are jointly and severally liable for the $89,786.43 and all collection costs.

5. By demand letter dated September 16, 2010, a true and correct copy of which is attached as <u>Exhibit C</u>, Sellars' counsel, Thomas B. Archbold, provided a detailed reconciliation showing all loan amounts and all credits, and demanded payment of the $89,786.43 balance within five days of the date of the letter.

6. I prepared the detailed reconciliation attached to the September 16, 2010 demand letter. It is accurate. It shows the date, invoice number and amount of each invoice for raw materials paid by Sellars and the date of each wire transfer made by Sellars pursuant to the Agreement.

7. Attached as <u>Exhibit D</u> are true and correct copies of all the raw material invoices listed in the reconciliation, all of which were paid by Sellars. They total $203,384.67.

8. Attached as <u>Exhibit E</u> are true and correct copies of documentation showing the December 24, 2009 wire transfer of $100,000 to Strateline and the January 15, 2010 wire transfer of $70,000 to S-Line listed in the reconciliation.

9. The reconciliation attached to the demand letter also lists the two credit memo "invoices" for shipments of cotton that Sellars received from Strateline that were credited against the loan amount. True and correct copies of those two credit memo "invoices" are attached as <u>Exhibit F</u>.

10. In addition, the reconciliation attached to the demand letter also lists two credit memo "invoices" for the cotton that was subsequently returned by Sellars to Strateline at

QB\13717671.2
Case 2:11-cv-00400-LA    Filed 08/01/11    Page 2 of 12    Document 30

Strateline's request (and associated freight) because Strateline needed that cotton to fill orders received from others. True and correct copies of those invoices are attached as Exhibit G.

11. The reconciliation also contains a line item titled "cotton sent in excess of credits" for $308. This adjustment was made because the packing slips and bills of lading for the shipments of cotton that we sent back to Strateline indicated we had returned 560 pounds more than Strateline had given us credit for on the two credit memos. Thus, the $308 adjustment was made. Attached as Exhibit H are true and correct copies of the detail of this reconciliation and the supporting packing lists, bills of ladings and credit memos.

12. Finally, the reconciliation attached to the demand letter shows that $284,951.14 was withdrawn from the escrow account by Sellars, after providing a notice of default to the other parties, and then credited against the loan balances. Attached as Exhibit I is a true and correct copy of the confirmation for the $284,951.14 that was wire transferred out of the escrow account.

13. Despite the September 16, 2010 demand, neither S-Line, STG, SSI, Strateline, Circle, or Mourton has paid any of the $89,786.43 that was due and owing as of September 16, 2010.

14. Currently there is due and owing $89,786.43 plus prejudgment interest at the legal rate of 5% from September 21, 2010 through the date of this affidavit and accruing hereafter at a per diem rate of $12.2995. Under the agreement, S-Line, STG, SSI, Strateline, Circle and Mourton are jointly and severally liable for the $89,786.43 plus interest plus all collection costs. Through July 20, 2011 Sellars has incurred collection costs of $15,065.37.

15. Pursuant to the agreement, S-Line, STG, SSI, Strateline and Circle each granted Sellars a security interest in the following collateral to secure the repayment of all loans made pursuant to the Agreement:

    (a)   <u>Inventory</u>: All inventory, whether now owned or hereafter acquired and wherever located and other tangible personal property held for sale or lease or furnished or to be furnished under contracts of service or consumed in [its] business;

    (b)   <u>Equipment</u>: All equipment, whether now owned or hereafter acquired and wherever located, including but not limited to all present and future equipment, machinery tools, motor vehicles, trade fixtures, furniture, furnishings, office and recordkeeping equipment and all goods for use in [its] business;

    (c)   <u>Accounts, Contract Rights and Other Rights to Payment</u>: Each and every right to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property, out of a rendering of services, out of a loan, out of the overpayment of taxes or other liabilities, or otherwise arises under any contractual or agreement, whether such right to payment is or is not already earned by performance, and howsoever such right to payment may be evidenced, together with all other rights and interests (including all liens and security interests) which [it] may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any of the property of such account debtor or other obligor: all including but not limited to all present and future debt instruments, chattel papers, accounts, contract rights, loans and obligations receivable, tax refunds and lease receivables;

    (d)   <u>Instruments</u>: All instruments, chattel paper, letters of credit or other documents of [it], whether now owned or hereafter acquired, including but not limited to promissory notes, drafts, bills of exchange and trade acceptances, all rights and interests of [it], whether now existing or hereafter created or arising, under leases, agreements or other contracts;

    (e)   <u>Deposit Accounts</u>: All right, title and interest in all deposit and investment accounts maintained with any bank, savings and loan association, broker, brokerage, or any other financial institution. Together will all monies and other property deposited or held therein, including, without limitation, any checking account, savings account, escrow account, savings certificate and margin account; and

    (f)   <u>General Intangibles</u>: All general intangibles, whether now owned or hereafter acquired, including, but not limited to, applications for patents,

patents, copyrights, trademarks, trade secrets, good will, tradenames, customer lists, permits and franchises, and the right to use [its] name;

Together will all substitutions and replacements for and products of any of the foregoing property and proceeds of any and all of the foregoing property and, in the case of all tangible Collateral, together with (i) all accessories, attachments, parts, equipment, accessions and repairs now or hereafter attached or affixed to or used in connection with any such goods, (ii) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods, (iii) insurance proceeds, and (iv) all books and records of [it].

16. Sellars loaned Nunn $250,000 pursuant to the terms of a Secured Promissory Note dated April 26, 2010 ("the Note"), a true and correct copy of which is attached as <u>Exhibit J</u>.

17. Pursuant to the terms of the Note, the full amount owing under terms of the Note as of April 25, 2011 was due on that date.

18. As of April 25, 2011, $250,000 in principal and interest of $4,936.99 was due and owing under the terms of the Note.

19. Nunn failed to make the payment due and owing on April 25, 2011 despite due demand.

20. Nunn has still failed to make any payment under the Note. As of the date of this affidavit, Nunn owes $250,000 in principal on the Note, plus interest of $4,936.99 through April 25, 2011, plus interest thereafter accruing at the default per diem rate of $41.0959. In addition, through July 20, 2011 Sellars has incurred $22,098.52 in connection with its efforts to collect the amounts outstanding.

21. Pursuant to a Guaranty Agreement dated April 26, 2010 ("the Guaranty"), a true and correct copy of which is attached hereto as <u>Exhibit K</u>, TIG Ventures, LLC ("TIG Ventures") and Nunn Holdings, LLC ("Nunn Holdings"), jointly and severally, guaranteed full and prompt payment of all amounts owed under the Note.

-5-
QB\13717671.2
Case 2:11-cv-00400-LA   Filed 08/01/11   Page 5 of 12   Document 30

22. Nunn, TIG Ventures and Nunn Holdings are jointly and severally liable to Sellars for all of the amounts currently outstanding under the Note.

23. Pursuant to a Security Agreement dated April 26, 2010, a true and correct copy of which is attached hereto as <u>Exhibit L</u>, TIG Ventures and Nunn Holdings each granted Sellars a security interest in the following Collateral to secure the repayment of all amounts owed under the Note:

> The following properties, assets and rights of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof and any additions, replacements, accessions and substitutions to or for the properties, assets and rights: all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, accounts (including accounts receivable), any other contract rights and rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles including without limitation, all payment intangibles, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) or others or others possess, use or have authority to possess or use property (whether tangible or intangible) of Debtor, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics.

24. Under paragraph 10 of the April 26, 2010 Security Agreement with TIG Ventures and Nunn Holdings, upon default Sellars is entitled to "take possession of the Collateral" of TIG Ventures and Nunn Holdings described above, "with or without judicial process," and TIG Ventures and Nunn Holdings are required to "assemble the Collateral and make it available to [Sellars] at a place to be designated by [Sellars] which is reasonably convenient to [Sellars]."

25. By letter which I mailed and e-mailed on June 8, 2011, a true and correct copy of which is attached as <u>Exhibit M</u>, I demanded that both TIG Ventures and Nunn Holdings

-6-
QB\13717671.2
Case 2:11-cv-00400-LA   Filed 08/01/11   Page 6 of 12   Document 30

promptly "assemble the Collateral and make it available to [Sellars] at one location in the Tulsa, Oklahoma metropolitan area and advise me of that location."

26. TIG Ventures and Nunn Holdings have both ignored my letter.

27. Pursuant to a Pledge Agreement dated April 26, 2010, a true and correct copy is attached hereto as <u>Exhibit N</u>, Nunn pledged her entire membership interest in Nunn Holdings to Sellars to secure all amounts owed under the Note.

28. An Event of Default under the April 26, 2010 Pledge Agreement of Nunn has occurred since, among other things, Nunn has failed to pay the amounts owed to Sellars under the Note.

29. Accordingly, pursuant to paragraphs 1 and 3 of the April 26, 2010 Pledge Agreement with Nunn, Sellars is now entitled to exercise "any and all voting and other consensual rights" pertaining to Nunn's membership interest in Nunn Holdings.

30. Accordingly, by my June 8, 2011 letter (<u>Exhibit M</u>), I demanded that Nunn Holdings provide Sellars, as a member of Nunn Holdings, with a) a copy of all of its corporate records, including but not limited to operating agreements, articles of incorporation, bylaws, board resolutions and board minutes, b) a copy of all of its annual, quarterly and monthly financial statements, c) a copy of any state and federal tax return filed on its behalf and d) a full accounting of any distributions it has made.

31. Nunn Holdings has not provided any of the requested documents.

32. Pursuant to a Pledge Agreement dated April 26, 2010, a true and correct copy of which is attached hereto as <u>Exhibit O</u>, Nunn Holdings pledged its entire membership interest in TIG Ventures to Sellars to secure all of its obligations to Sellars.

33. An Event of Default under the April 26, 2010 Pledge Agreement of Nunn Holdings has occurred since, among other things, Nunn Holdings has failed to pay the amounts owed to Sellars under the Note by Nunn.

34. Under paragraphs 1 and 3 of the April 26, 2010 Pledge Agreement with Nunn Holdings, Sellars is thus now entitled to exercise "any and all voting and other consensual rights" pertaining to Nunn Holdings membership interest in TIG Ventures.

35. Accordingly, by my June 8, 2011 letter (<u>Exhibit M</u>), I demanded that TIG Ventures provide Sellars, as a member of TIG Ventures, with a) a copy of all of its corporate records, including but not limited to operating agreements, articles of incorporation, bylaws, board resolutions and board minutes, b) a copy of all of its annual, quarterly and monthly financial statements, c) a copy of any state and federal tax returns filed on its behalf and d) a full accounting of any distributions it has made.

36. TIG Ventures has not provided any of the requested records.

37. Pursuant to a Pledge Agreement dated April 26, 2010, a true and correct copy is attached hereto as <u>Exhibit P</u>, TIG Ventures pledged its entire membership interest in Circle to Sellars to secure all of its obligations to Sellars.

38. An Event of Default under the April 26, 2010 Pledge Agreement of TIG Ventures has occurred since, among other things, TIG Ventures has failed to pay the amount owed to Sellars under the Note by Nunn.

39. Under paragraphs 1 and 3 of the April 26, 2010 Pledge Agreement with TIG Ventures, Sellars is thus now entitled to exercise "any and all voting and other consensual rights" pertaining to TIG Ventures membership interest in Circle.

40. Accordingly, by my June 8, 2011 letter (Exhibit M), I demanded that Circle provide Sellars, as a member of Circle, a) a copy of all of its corporate records, including but not limited to operating agreements, articles of incorporation, bylaws, board resolutions and board minutes, b) a copy of all of its annual quarterly and monthly financial statements, c) a copy of any state and federal tax returns file on its behalf and d) a full accounting of any distributions it has made.

41. Circle has not provided any of the requested records.

42. Pursuant to the terms of a Secured Promissory Note dated April 26, 2010, ("the Circle Note"), a true and correct copy of which is attached as Exhibit Q, Nunn loaned the $250,000 she received from Sellars to Circle.

43. To secure obligations owed to Nunn under the Circle Note, Circle granted Nunn a security interest in the following Collateral, as defined in a Security Agreement dated April 26, 2010 between Circle and Nunn (the "Circle Security Agreement"), a true and correct copy which is attached as Exhibit R:

    (a) Inventory: All inventory of Circle, whether now owned or hereafter acquired and wherever located and other tangible personal property held for sale or lease or furnished or to be furnished under contracts of service or consumed in Circle's business;

    (b) Equipment: All equipment of Circle, whether now owned or hereafter acquired and wherever located, including but not limited to all present and future equipment, machinery tools, motor vehicles, trade fixtures, furniture, furnishings, office and recordkeeping equipment and all goods for use in Circle's business;

    (c) Accounts, Contract Rights and Other Rights to Payment: Each and every right of Circle to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property by Circle, out of a rendering of services by Circle, out of a loan by Circle, out of the overpayment of taxes or other liabilities of Circle, or otherwise arises under any contractual or agreement, whether such right to payment is or is not already earned by performance, and howsoever such right to payment may be evidenced, together with all other rights

and interests (including all liens and security interests) which Circle may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any of the property of such account debtor or other obligor: all including but not limited to all present and future debt instruments, chattel papers, accounts, contract rights, loans and obligations receivable, tax refunds and lease receivables;

(d) <u>Instruments:</u> All instruments, chattel paper, letters of credit or other documents of Circle, whether now owned or hereafter acquired, including but not limited to promissory notes, drafts, bills of exchange and trade acceptances, all rights and interests of Circle, whether now existing or hereafter created or arising, under leases, agreements or other contracts;

(e) <u>Deposit Accounts:</u> All right, title and interest of Circle in all deposit and investment accounts maintained with any bank, savings and loan association, broker, brokerage, or any other financial institution. Together will all monies and other property deposited or held therein, including, without limitation, any checking account, savings account, escrow account, savings certificate and margin account; and

(f) <u>General Intangibles:</u> All general intangibles of Circle, whether now owned or hereafter acquired, including, but not limited to, applications for patents, patents, copyrights, trademarks, trade secrets, good will, tradenames, customer lists, permits and franchises, and the right to use Circle's name;

Together will all substitutions and replacements for and products of any of the foregoing property and proceeds of any and all of the foregoing property and, in the case of all tangible Collateral, together with (i) all accessories, attachments, parts, equipment, accessions and repairs now or hereafter attached or affixed to or used in connection with any such goods, (ii) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods, (iii) insurance proceeds, and (iv) all books and records of Circle.

44. Pursuant to a Collateral Pledge Agreement dated April 26, 2010, a true and correct copy of which is attached as <u>Exhibit S</u>, Nunn granted Sellars a security interest in the Circle Note and the Circle Security Agreement to secure all obligations owed by Nunn under the Note to Sellars.

45. An Event of Default has occurred under the Collateral Pledge Agreement dated April 26, 2010 from Nunn to Sellars because Nunn has failed to make any of the payments owed to Sellars under the terms of her Note.

46. As a result of that Event of Default, Sellars is entitled, pursuant to paragraph 9 of the April 26, 2010 Collateral Pledge Agreement, to exercise "all of the rights and remedies" that Nunn has under the Secured Promissory Note dated April 26, 2010 from Circle and the Security Agreement dated April 26, 2010 between Circle and Nunn.

47. Accordingly, by my June 8, 2011 letter (<u>Exhibit M</u>), I exercised Sellars' rights under the Secured Promissory Note dated April 26, 2010 from Circle to Nunn and the Security Agreement dated April 26, 2010 between Circle and Nunn. Specifically, I demanded that Circle immediately remit to Sellars any and all amounts, principal and interest, currently outstanding on the Secured Promissory Note to Nunn and, pursuant to paragraphs 5 and 10 of the April 26, 2010 Security Agreement between Circle and Nunn, requested that Circle immediately deliver to Sellars a written list of all of its assets, and further demanded that Circle promptly "assemble the Collateral [as defined in the Security Agreement] and make it available to [Sellars]" at one location in the Tulsa, Oklahoma metropolitan area and advise me of that location."

48. Circle has ignored all of these requests and demands.

Dated this 1st day of August, 2011.

/s/
Joseph A. Mayer

46. As a result of that Event of Default, Sellars is entitled, pursuant to paragraph 9 of the April 26, 2010 Collateral Pledge Agreement, to exercise "all of the rights and remedies" that Nunn has under the Secured Promissory Note dated April 26, 2010 from Circle and the Security Agreement dated April 26, 2010 between Circle and Nunn.

47. Accordingly, by my June 8, 2011 letter (Exhibit M), I exercised Sellars' rights under the Secured Promissory Note dated April 26, 2010 from Circle to Nunn and the Security Agreement dated April 26, 2010 between Circle and Nunn. Specifically, I demanded that Circle immediately remit to Sellars any and all amounts, principal and interest, currently outstanding on the Secured Promissory Note to Nunn and, pursuant to paragraphs 5 and 10 of the April 26, 2010 Security Agreement between Circle and Nunn, requested that Circle immediately deliver to Sellars a written list of all of its assets, and further demanded that Circle promptly "assemble the Collateral [as defined in the Security Agreement] and make it available to [Sellars]" at one location in the Tulsa, Oklahoma metropolitan area and advise me of that location."

48. Circle has ignored all of these requests and demands.

Dated this 1st day of August, 2011.

s/Joseph A. Mayer